Claude M. STURGIS, Plaintiff,

v.

SEAFARERS INTERNATIONAL UNION,
and Seafarers Pension Plan,
Defendants.

Civ. A. No. 2:92cv1298.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 15, 1993.

Rice Arthur Jett, Jr., Jett, Berkley, Furr & Padgett, Norfolk, VA, for plaintiff.

Carroll Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for defendants.

## OPINION AND ORDER

MORGAN, District Judge.

This matter comes before the Court on Defendants' combined motions for summary judgment and to strike Plaintiff's jury trial demand and punitive damages claim. Plaintiff, a member of Defendant Seafarers International Union ("SIU") and plan member of the Seafarers Pension Plan ("SPP"), brought this action to compel the SPP trustees to award him an increase in his benefits.

## I. BACKGROUND

The SPP is a pension trust administered by trustees appointed by the SIU and employers who are parties to the collective bargaining agreement under which SIU members are employed. In December of 1979, a jury awarded Plaintiff a disability pension from the SPP, effective December 1976, in the amount of $250 per month. Although Plaintiff had worked within the SPP's coverage for twenty-three (23) years before he became permanently disabled, the SPP had denied coverage based upon rules which required that a covered member have a certain minimum number of days worked in the period immediately preceding his application for a pension (the "break in service rules"). Upon becoming injured on the job, Plaintiff spent nearly four years attempting to rehabilitate to a point that he would be able to return to work. The effort eventually proved unsuccessful and he was certified as permanently and completely disabled. When it became obvious that he would be unable to return to work he applied for his pension but was turned down because he lacked the work history over the prior year to qualify under the rules. On appeal, the Fourth Circuit Court of Appeals affirmed the verdict awarding him a pension and held that the jury could have found the SPP rules and their application in the Plaintiff's case were unreasonable. *Seafarers Pension Plan v. Sturgis*, 630 F.2d 218 (4th Cir.1980).[1]

In 1981, the SPP trustees elected to grant a retroactive increase in pension benefits which had the effect of bringing Plaintiff's monthly benefit to $300. The trustees have also periodically elected to issue year-end bonuses in the form of a lump sum payment. As a result of these decisions, Plaintiff received $500 in 1988, $400 in 1990 and $500 in 1991. The trustees have granted a number of increases in monthly benefits paid to retiring union members over the last decade. In each case, however, the trustees granted the increase prospectively by requiring that in order to be eligible for the higher benefit, the member must work at least one-hundred twenty-five (125) days at sea after the increase went into effect (the "125–day rule"). Union members who today retire on disability, with the 125–day requirement satisfied as to the last increase, will receive $600 per month.

In 1991, Plaintiff contacted the SPP seeking an increase in his monthly benefits from $300 to $600 per month. He explained that both he and his wife were in very poor health and that, given his present pension, he was unable to obtain adequate medical care for the two of them. After initially being denied an increase by the SPP Claims Department, Plaintiff sought to appeal the decision to the SPP trustees in March of 1992. Citing the "125–day rule," the trustees denied his application. Plaintiff subsequently brought the present action alleging that, given his circumstances, the decision to deny him an increase constituted arbitrary and capricious action on the part of the SPP. It would appear from the face of the Complaint that he seeks an injunction ordering that he be

---

1. This Court notes that the issue presented in Plaintiff's earlier challenge to the SPP's total denial of pension benefits to him based upon its "break in service" rules is inapposite to the issue presented in the present case. The ruling of the court of appeals in that matter is, therefore, not controlling as to the present action.

granted an increase in his benefits and damages in the amount of $75,000.

Defendants SIU and SPP filed a joint Motion for Summary Judgment on March 12, 1993 In their brief attached thereto, the defendants argued (1) that summary judgment should be granted in favor of SIU because the union was in no way associated with the administration of the pension fund nor the decision to deny Plaintiff an increase in benefits, (2) that summary judgment should be granted as to both defendants because the decision of the trustees was reasonable, (3) that Plaintiff's jury trial demand should be stricken, and (4) that Plaintiff's punitive damages claim should be stricken. The Court notes that the claim as against Defendant SIU was dismissed by Order of this Court dated March 10, 1993. For the reasons stated below, Defendant SPP's motion for summary judgment is GRANTED and the motions to strike the jury demand and to strike the punitive damages claim are thereby rendered moot.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.S. § 1001 et seq. (Law Co-op 1990), and the Labor Management Relations Act ("LMRA"), 29 U.S.C.S. § 141 et seq. (Law Co-op 1993). ERISA establishes a cause of action in a plan beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.S. § 1132(a)(1)(B) (Law Co-op 1990). The pension fund in the present case is an ERISA "pension plan or plan" because it is a "plan, fund or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms ... such plan, fund, or program provides retirement income to employees." 29 U.S.C.S. § 1002(2) and (3) (Law Co-op 1990).

■ The LMRA is less specific. Under Section 186, unions and employers are authorized to set up pension plans jointly and make contributions to pension plans "estab-

lished ... for the sole and exclusive benefit of the employees ... and their families and dependents." 29 U.S.C.S. § 186(c)(5) (Law Co-op 1993). Federal courts have interpreted Section 186 to be a basis for jurisdiction under which they may review the actions taken by fiduciaries of such pension trusts. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). As the pension at issue in the present case was established as a joint trust between the SIU and a multi-employer group, this Court also has jurisdiction under the LMRA to review the actions of its trustees in denying benefits to Plaintiff.

## III. STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when the court, viewing the record as a whole, and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985). As an initial matter, the burden is upon the moving party to show the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Once a party files a motion for summary judgment and makes such a showing, the non-moving party may not rest upon the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. *See also* Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine only if a reasonable factfinder could return a verdict in favor of the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## IV. STANDARD OF REVIEW OF DECISIONS BY THE SPP TRUSTEES

■ Since ERISA was not intended to pre-empt other applicable federal law (such

as the LMRA) (29 U.S.C.S. § 1144(d) (Law Co-op 1990)), this Court must derive the appropriate standard of review by reference to both statutes. *See Bugher v. Freightner,* 722 F.2d 1356, 1359 (7th Cir.1983) (analyzing the interplay between ERISA and LMRA). Under the law of both ERISA and LMRA, and given the terms of this particular trust, this Court is to give substantial deference to the decisions of the SPP trustees regarding whom to grant an increase in benefits.

As noted above, federal courts, by implication of statute, have found the existence of a cause of action to enforce the fiduciary duties of trustees of joint union-employer pension funds under the LMRA. The actions of such trustees are to be overturned only upon a finding that they have acted in an arbitrary and capricious manner. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989).

■ Prior to the Supreme Court's decision in *Firestone,* federal courts had generally adopted the "arbitrary and capricious" standard of the LMRA in actions brought pursuant to ERISA against trustees of a pension fund for a denial of benefits. In *Firestone,* the Court altered the standard under which ERISA review of trustee action was to be conducted. Where the trust instrument contains no express grant of discretion over a particular type of decision, the court is to conduct a *de novo* review. *Id.* at 115, 109 S.Ct. at 956-57. Where, however, the trust instrument explicitly vests discretion in the trustees regarding decisions of the type at issue (and the action arises under ERISA) the court is to review that decision under an "abuse of discretion" standard. *Id.* at 115, 109 S.Ct. at 956-57.[2]

When reviewing a denial of benefits under ERISA, a threshold question for reviewing courts is "whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions." *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989). If the plan grants fiduciaries the discretion to settle disputed eligibility questions or to construe "doubtful" provisions of the plan, "a reviewing court may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse." *Id.* *Davis v. Burlington Industries, Inc.,* 966 F.2d 890, 894-95 (4th Cir.1992). In order to answer this "threshold question," it is necessary to refer to the trust instrument itself to determine whether it gives discretion to the trustees regarding the decision undertaken in the present case.

The trust instrument is replete with provisions granting discretion to the trustees.

The Trustees shall without limitation have the power and duty to: (a) Manage and control all assets of the Pension Trust for the purposes of the Trust. This power is within the exclusive authority and discretion of the Trustees.... (d) Formulate and adopt a pension program for the exclusive benefit of Employees and promulgate and establish rules and regulations for the administration and operation thereof; and in pursuance thereto (but without intent to limit such authority) formulate and establish conditions of eligibility.... The Trustees shall have the absolute and exclusive authority to adopt, implement and interpret Plan Rules and Regulations necessary to carry out the policies and functions of the Plan. The *Trustees shall have sole discretion to promulgate and apply such Rules and Regulations* as they see fit for the proper operation of the Plan.

---

**2.** In *Firestone,* the plan in question did not grant discretion to the trustees and the Court held that courts reviewing such actions were to do so *de novo.* Technically, the posture of the case makes the converse holding (i.e. the court should review for an abuse of discretion where discretion is express in the trust instrument) dictum. Drawing from general trust principles, the trustee in *Firestone* argued that "abuse of discretion" was the appropriate standard in their case even though the trust instrument granted no such discretion. The Court rejected this argument stat-ing that a denial of benefits was to "be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority* to determine eligibility for benefits or to construe the terms of the plan.... Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956 (citing Restatement (Second) of Torts § 187. Comment (d) (1959)).

Defendant's Exhibit C, "Seafarers Pension Agreement and Declaration of Trust," Art. III and Amend. 9. In the present case, Plaintiff takes issue with the decision of the trustees not to award him the same monthly benefits they have given to SPP members who have taken retirement or disability pensions in the years following Plaintiff's disability retirement. It is uncontroverted that in so doing, the trustees have followed the prospective, "125–day rule" of eligibility for increases. The authority and discretion of the trustees to "promulgate and apply" such rules is expressed in the trust instrument. Thus, under ERISA this action of the trustees must be reviewed for an abuse of discretion.

The Court is faced with a facial conflict of standards depending upon whether it views the action as arising under ERISA or LMRA—"abuse of discretion" under the former and "arbitrary and capricious" under the latter. It appears, however, that there is little distinction between the two. "Abuse of discretion" is sometimes expressed interchangeably with "arbitrary and capricious." *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir.1989). *See also De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989) (noting that the same inquiry—"reasonableness"—guided the court under both "abuse of discretion" and "arbitrary and capricious").

■ In general, the court should not disturb action taken by the trustees if it finds a reasonable basis for the decision. *See De Nobel*, 885 F.2d at 1187 (4th Cir.1989) ("As the [*Firestone* ] Court made plain, what follows from the applicability of the abuse of discretion standard is that the trustee's interpretation of the relevant provisions—hence the challenged denial of benefits—'will not be disturbed if *reasonable*.' (quoting *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954–55 (emphasis supplied in *De Nobel* ) (citations to Seventh and Eighth Circuits omitted)); *Jett*, 890 F.2d at 1139 ("[T]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."). In conducting such a review, it is not the function of the court to substitute its judgment for that of the plan administrator in an attempt to determine the best decision which could have been made. *Whipp v. Seafarers Vacation Plan*, 832 F.2d 853, 856 (4th Cir.1987). Thus, where there exists a reasonable basis upon which the trustees could have concluded that a denial of an increase in benefits as applied for by the beneficiary was not in the best interests of the trust and all of its beneficiaries collectively (*See* 29 U.S.C.S. § 1104(a)(1) (Law Co-op 1990)), the court should not subject such a decision to a factual determination of whether or not such a reasonable decision was the best decision.

## V. THE DECISION OF THE SPP TRUSTEES

■ At the outset, the Court observes that the procedures employed by the SPP in reaching a decision upon Plaintiff's application for an increase were in accordance with SPP rules and regulations and afforded Plaintiff a reasonable review. After his initial request was denied by the SPP Claims Department (Affidavit of Audrey F. Feffer, Associate Counsel of SPP, at 3.), Plaintiff pursued an appeal to the Board of Trustees. Plaintiff was thereupon invited to submit any further documentation or evidence for consideration by the trustees. Silver Deposition Exhibit # 3. The SPP Claims Department wrote a short case history for consideration by the trustees in reaching a decision. Such "write-ups" are generally reviewed by an attorney in the Claims Department to insure that all applicable evidence which should be considered is contained in the report. Silver Deposition at 62–63. Upon consideration of the record, a subcommittee of the Board of Trustees denied Plaintiff's request and the full Board ratified this action at its next regular meeting in February of 1993. Affidavit of Joseph Cecire, Trustee of SPP, at 5–6;

Defendants have submitted affidavits and deposition testimony outlining the fiscal background of the decision not to award retroactive increases in recent years. The "125–day rule" is incorporated into the general eligibility requirements of the "Seafarers Pension Plan Regulations." In addition, An-

notation (A) to Article V of the Regulations ("Amount of Pensions") states that "an employee must receive credit for 125 days of employment between the effective date of said increase and the last day of the calendar year in which the effective date occurs, or any subsequent calendar year." Stated another way, in order to qualify for an increase, a member must have 125 days of service in some calendar year after the increase has gone into effect and before applying for his pension. A member who becomes disabled after the effective date but before the end of that year, however, is subject to an exception from this "125–day rule," Such a member can be "grandfathered" into the group of persons pensioned at the increased benefit rate. This exception serves to allow a pensioner to receive the higher pension, where the pensioner would otherwise have been entitled to such an increase, but for an injury occurring after the increase in benefits was adopted. As all of these provisions are written into the rules and regulations under which the SPP trustees administer the fund, Plaintiff may not argue that the denial of his request to receive an increase retroactively was in violation of SPP rules and regulations or standard SPP operating procedure.

Plaintiff argues that his situation is unique in that his pension is very low by comparison to new disability retirees and his medical bills in particular are very high.[3] Though it appears to the Court that this may be true, it is not a basis upon which Plaintiff may be granted relief. Plaintiff has presented no evidence, by affidavit or otherwise, which contradicts any of Defendant's affidavits, exhibits or deposition testimony. Instead, Plaintiff relies solely upon hardship, cost of living and his early participation in the organizing of the SIU. Representatives of SPP stated that the SPP has never granted an increase in benefits based upon hardship or increases in the cost of living. Deposition of Ellen Silver, Associate Counsel for Seafarers Pension Plan [hereinafter "Silver Deposition"] at 41, 44. In short, Plaintiff has not established facts which would suggest that the trustees have acted differently in this case than the SPP rules and regulations or customary practice require. In order to reverse the decision of the trustees, therefore, this Court must find that the rules and regulations prohibiting retroactive increases are inherently unreasonable.

Plaintiff argues that the trust has substantial assets and can afford to grant an increase to him. Apart from hardship, Plaintiff has presented no evidence that his case is unique, or that granting him an increase would not compel the SPP to grant increases to other pensioners similarly situated. Plaintiff's application for an increase can only be interpreted as either a request for a general retroactive increase or, a general "hardship exception" to the rules and regulations providing that increases in benefits be prospective only. The trustees rely on actuarial projections in making decisions regarding the application of trust funds. Silver Deposition at 42. In part, the decision to grant only prospective increases is based upon the contributions to the fund by employers. Affidavit of Theodore A. Ferrara [hereinafter "Ferrara Affidavit"] at 2.[4] In the mid–1970's (when Plaintiff effectively began drawing a pension), employers were contributing $11.22 per day of service. That contribution has been increasing constantly to a current rate of $26.55 per day. Silver Deposition at 33. The trustees have elected to award higher pensions to members who have worked in years where their employer's contribution was greater. It is also clear that the trustees have given consideration to pensioners such as Plaintiff who had been on the plan for many years and were receiving smaller checks. In 1981 they choose to grant a $50 retroactive increase and three times since have granted modest annual bonuses to all pensioners. This Court cannot say that it is unreasonable to choose to grant increases in benefits prospectively only in an effort to effectively administer the assets of the

---

3. Medical benefits are paid under the welfare portion of the plan and the records show the Plaintiff and his wife received substantial medical benefits in addition to his monthly pension. Silver Deposition at 38, 43.

4. Mr. Ferrara is Executive Vice–President of Basil Castrovinci Associates, Inc., a firm which has provided actuarial services to the Seafarers Pension Plan for more than twenty (20) years.

trust—even one which presently is financially secure.

The essence of Plaintiff's complaint with the manner in which his pension is being administered is that after more than ten years on a fixed income, the amount of the pension is too small for today's cost of living. He argues that, since the trustees have seen fit to allow those retiring on disability today to receive $600 per month, it is unreasonable to expect a pensioner such as himself to get by on $300. It is in part because he has been on the plan for so many years that there is a disparity between his monthly check and that of new pensioners. In a sense, he proposes that a cost of living adjustment for pensioners who are similarly situated must be inherent in the plan. Whereas this Court is sympathetic to the plight of those living on a fixed income, it is not the role of courts to second guess the actuarial decisions of the administrators of pension trusts, particularly those trusts which expressly grant the trustees discretion in promulgating and applying the rules and regulations under which benefits are to be awarded.

## VI. CONCLUSION

This Court FINDS that there is a reasonable basis for the decision by the SPP trustees not to award the Plaintiff the retroactive increase in pension benefits he requested. The Court further FINDS that the Plaintiff's request was properly handled in accordance with the established administrative procedures of the SPP, which this Court FINDS to be reasonable. Plaintiff has not established any fact by affidavit or other evidence which refutes the Defendant's submissions by affidavit, exhibits and deposition testimony that this decision was based upon the procedurally correct application of the SPP's rules and regulations supported by independent actuarial advice.

Given the deferential standard of review applicable to decisions of the SPP trustees, these findings constitute a showing that there is no genuine issue of material fact in dispute as to the reasonableness of the actions of the SPP trustees. Where this Court finds a trust's procedural rules and regula-

tions to be reasonable and properly applied, and where the trustees' decision is found to be supported by independent actuarial advice, there is no basis upon which this Court may undertake a factual inquiry into the trustees' decision. Accordingly, the Defendant Seafarers Pension Plan's motion for summary judgment is GRANTED and JUDGMENT is entered in its behalf. The Defendant's motions to strike Plaintiff's jury trial demand and to strike the punitive damages claim are RENDERED MOOT.

It is so ORDERED.