HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION WELFARE/PENSION FUNDS, Plaintiffs,

v.

CAUCUS CLUB, INC., Defendant.

No. 90–CV–71371–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 8, 1991.

Miller, Cohen, Martens & Ice, P.C. by John G. Adam, Southfield, Mich., for plaintiffs.

Finkel, Whitefield & Selik, P.C. by Robert J. Finkel, Southfield, Mich., for defendant.

## OPINION

GILMORE, District Judge.

Plaintiffs, Trustees of the Hotel Employees and Restaurant Employees International Union Welfare and Pension Funds ("Funds"), bring this action under Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145, and Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiffs allege that Defendant restaurant, the Caucus Club, Inc., failed to make payments to the Funds as required by a settlement agreement between the parties, and as required by a collective-bargaining agreement between the Hotel Employees and Restaurant Employees Union, Local 24 ("Union"), and the Caucus Club.[1]

On June 21, 1990, Plaintiffs submitted a Motion for Summary Judgment and Injunctive Relief. Plaintiffs move the Court to: 1) enforce the settlement agreement and enter judgment against Defendant for failure to make payments to the Funds for contributions owed from August through November, 1988; 2) direct Defendant to pay delinquent contributions owed to the Funds for the period of May, 1989 through July, 1990; and 3) issue an injunction directing Defendant to permit the Funds to audit Defendant's payroll records, and enjoining Defendant from selling or transferring any assets until the Funds receive the delinquent payments.

On July 12, 1990, Defendant submitted a Motion to Dismiss, claiming that Plaintiffs' failure to invoke or exhaust mandatory contractual remedies justifies dismissal of the complaint. Defendant contends that a clause in the collective-bargaining agreement which provides for the mandatory arbitration of disputes over contributions to the Funds dictates that the instant dispute be arbitrated before judicial relief may be sought.

The Court heard oral argument on Plaintiffs' and Defendant's motions on December 13, 1990. As discussed in detail below, the Court finds that the Funds are not bound to arbitration by the collective-bargaining agreement. Therefore, this collection action is properly before the Court, and Defendant's Motion to Dismiss is denied. The Court grants Plaintiffs' Motion for Summary Judgment, finding no issue of material fact concerning the delinquency of welfare and pension contributions. Furthermore, the Court directs Defendant to permit the Funds to audit payroll records and enjoins Defendant from selling or transferring any assets until the delinquent contributions owed to the Funds are paid in full.

### I

The Funds are multiemployer trust funds established to provide medical, hospital, and pension benefits to employees in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Funds receive contributions from participating employers pursuant to collective-bargaining agreements between the employers and the Union. On August 8, 1987, the Union and the Caucus Club entered into a collective-bargaining agreement ("Agreement") which required the Caucus Club to make monthly welfare and pension benefit contributions to the Funds and to submit monthly contribution reports. The Agreement

---

**1.** On May 31, 1990, the Union filed unfair labor practices charges against the Caucus Club with the National Labor Relations Board, alleging violation of Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), for failing to make pension and welfare contributions as required by the collective-bargaining agreement. Defendant indicated that the matter is still pending before the Board.

also provided that the Caucus Club must make available for inspection and audit by the Funds all records required in connection with administering the Funds. The Agreement remained in effect from August 1, 1987 through July 31, 1990.

Article V, Section 8 of the Agreement provided, in pertinent part:

Notwithstanding any other provision of this Agreement concerning the settlement of disputes or grievances, all disputes or grievances involving the provisions of this article, including any controversies with respect to contributions owed to the Funds, shall be resolved by arbitration. . . .

On November 30, 1988, Trustees of the Funds filed an action in federal court against the Caucus Club alleging that the Club failed to make welfare and pension contributions for the period of August through November, 1988. *Hotel Employees and Restaurant Employees Int'l Union Welfare and Pension Funds v. Caucus Club, Inc.*, No. 88–74689 (E.D.Mich.). The Funds and the Caucus Club signed an agreement ("Settlement Agreement") which provided that the Club would pay $15,458.70 into the Funds in satisfaction of the claims, plus $600 in attorney fees and $712.84 in interest.

The Settlement Agreement contained a payment schedule [2] and provided that a default would occur "if Defendant fails to make the payments ... and/or fails to remain current on contributions owed to the Funds, after February 28, 1989." In the event of default, the Settlement Agreement provided that the complaint would be refiled. Default would also entitle the Funds to enter and enforce an attached Consent Judgment for $20,000 against the Caucus Club for delinquent contributions owed for the period of August through November, 1988, and would make "all amounts outstanding" immediately due.

Plaintiffs filed their present Complaint on May 15, 1990, alleging that Defendant failed to abide by the Settlement Agreement payment schedule. Defendant does not contest this allegation. Plaintiffs also allege that Defendant failed to make welfare and pension contributions from May, 1989 through July, 1990. According to Plaintiffs, the total amount Defendant owes to the Funds for delinquent contributions during this period is $64,767.12.[3] Defendant denies this allegation.

II

The Funds were established pursuant to the LMRA, Section 302(c), 29 U.S.C. § 186(c), and are governed by ERISA, 29 U.S.C. § 1001 *et seq.*, and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1145. Subject-matter jurisdiction is properly founded upon Section 301(a) of the LMRA, 29 U.S.C. § 185(a), which provides a federal forum for suits to enforce labor contracts, including pension and welfare fund agreements,[4] and upon Section 502 of ERISA, 29 U.S.C. § 1132, which provides a federal forum for enforcement of the various duties imposed

---

2. Defendant agreed to pay monthly installments starting in April, 1989 and ending in December, 1989.

3. Plaintiffs contend that the monthly contribution reports for May through December, 1989, reflect unpaid contributions of $29,223.42. Reports submitted for January through July, 1990, reveal unpaid contributions of $28,655.85. Plaintiffs then added to these figures interest and liquidated damages as permitted by ERISA, 29 U.S.C. § 1132, and provided for in the collective-bargaining agreement, to reach the total amount due of $64,767.12.

4. Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The terms "labor organization representing employees" have been interpreted broadly to include employee benefit funds. *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

by such trust fund agreements or by the provisions of ERISA.[5]

Defendant contends however, that the Court should dismiss the action because Plaintiffs were required to submit the dispute to arbitration prior to seeking judicial enforcement, as provided in the collective-bargaining agreement between the Union and the Caucus Club. The Court rejects Defendant's contention on two separate bases. First, Defendant waived any exhaustion requirement in the Settlement Agreement with Plaintiffs. Second, because this is a simple collection action under the provisions of ERISA, there is no controversy to arbitrate and thus no requirement to seek arbitration.

### A

■ Plaintiffs contend that Defendant expressly waived the collective-bargaining agreement's arbitration requirement when it signed the Settlement Agreement in satisfaction of the previous action the Funds filed in federal court. The Settlement Agreement provides that Defendant's failure to abide by its terms entitles the Funds to refile a complaint. Defendant's subsequent failure to abide by the Settlement Agreement, Plaintiffs claim, permits the Funds to bring the present action in federal court without first submitting any dispute to an arbitrator.

The Court agrees that Defendant waived the arbitration requirement when it signed the Settlement Agreement. The Settlement Agreement provides that the complaint will be refiled if Defendant "fails to remain current on contributions owed to the Funds, after February 28, 1989." Thus, the parties manifested an intent to submit to the judiciary any disputes regarding delinquent contributions after the specified date. Defendant cannot now insist upon arbitration when it has consented to the filing of a complaint in federal court for delinquencies such as those alleged in the instant action.

### B

■ Plaintiffs maintain that even if the Court determines that the Funds are bound to arbitrate controversies under the collective-bargaining agreement, the present action does not involve "controversies" within the meaning of the Agreement, and thus there is no requirement to seek arbitration.

The collective-bargaining agreement mandates arbitration of "controversies with respect to contributions owed to the Funds." However, Defendant has not presented evidence of any "controversies" needing to be arbitrated. Defendant has not asserted any substantive or meritorious defenses to payments of the delinquent amounts or alleged any dispute arising out of an interpretation of the contract that challenges Plaintiffs' right to the delinquent contributions. Rather, Defendant merely asserts a general denial of Plaintiffs' allegation of delinquency. Indeed, the only specific defense that Defendant suggests is the procedural requirement of arbitration.

■ The Court therefore concludes that this suit does not involve any "controversies" requiring arbitration. Quite simply, there is nothing to arbitrate. Defendant's liability under the collective-bargaining agreement is clear and unchallenged. The instant action is a simple collection matter.[6] A requirement of arbitration in a collective-bargaining agreement is not a prerequisite to an ERISA collection action. *Trustees of Nat'l Benefit Fund for Hospital and Health Care Employees v. Constant Care*

**5.** Section 502(a) of ERISA, 29 U.S.C. § 1132(a), provides:
A civil action may be brought—
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

**6.** A "simple collection matter" in an ERISA context is a case where liability is clear, such as in the case at bar. *See Robbins v. Prosser's Moving & Storage Company,* 700 F.2d 433 (8th Cir.1983), *aff'd sub nom. Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

*Community Health Center, Inc.,* 669 F.2d 213 (4th Cir.1982); *Central States, Southeast & Southwest Areas Pension Fund v. Howard Martin, Inc.,* 625 F.2d 171 (7th Cir.1980).[7]

The Congressional desire to provide fund trustees with quick and direct access to the courts for collection actions is evinced in the legislative history of the MPPAA, Section 515 of ERISA, 29 U.S.C. § 1145.[8] In discussing this Section, it was noted that "simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions," and that the Section was an attempt to "simplify delinquency collection." Senate Committee on Labor and Human Resources, S. 1076, MPPAA: Summary and Analysis of Consideration, 96th Cong., 2d Sess., 44 (Comm. Print, Apr. 1980) (1980 Senate Labor Committee Print).

Allowing issues of arbitrability to be injected into trustees' collection suits frustrates this legislative purpose. *Robbins v. Prosser's Moving & Storage Company,* 700 F.2d 433 (8th Cir.1983), *aff'd sub nom. Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). Consequently, the Court holds that the arbitration requirement in the collective-bargaining agreement is not a prerequisite to this collection action, and Defendant's Motion to Dismiss for failure to seek arbitration is therefore denied. Finding that Plaintiffs' Complaint is properly before the Court, the Court now considers Plaintiffs' motions.

### III

■ Plaintiffs move for summary judgment against Defendant for breaching the terms of the Settlement Agreement by not adhering to the payment schedule for delinquent contributions from August through November, 1988. In oral argument before the Court, Defendant conceded that it was in breach of the Settlement Agreement.

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There being no issue of material fact as to Defendant's breach, this Court grants Plaintiffs' Motion for Summary Judgment as to the breach of the Settlement Agreement. As provided in the agreement between the parties, the Court will enter and enforce the Consent Judgment against Defendant in the amount of $20,000, plus attorney's fees and costs.

■ Plaintiffs also move for summary judgment on the claim of delinquent contributions from May, 1989 through July, 1990. Plaintiffs' affidavits indicate that Defendant has made no payments since May, 1989, despite having submitted monthly reports revealing that substantial sums were owed. Defendant denies the allegation of delinquent contributions in its Amended Answer to Plaintiffs' Complaint. Defendant contends that this denial creates a genuine issue of material fact concerning the delinquency, thereby defeating Plaintiffs' Motion for Summary Judgment.

The Court finds that Defendant has not established the existence of a genuine issue of material fact merely by denying Plaintiffs' allegation. As the Supreme Court held in *Celotex Corp. v. Catrett,* 477 U.S.

---

**7.** Although the holding in *Howard Martin, supra,* was subsequently criticized and implicitly overruled, *see Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), the dicta stating that arbitration is not a prerequisite for a simple collection action was not criticized, and was cited with approval in *Constant Care, supra.*

**8.** Section 515 of ERISA, 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in order to defeat a properly supported motion for summary judgment, the non-moving party must show by "affidavits, or by the depositions, answers to interrogatories, and admissions on file ... 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. Defendant has not submitted any affidavit, or pointed to any document showing a genuine issue for trial concerning the delinquent contributions.

Moreover, the Federal Rules of Civil Procedure dictate that where the moving party has properly supported its motion with affidavits or other documents, the non-moving party may not rest on the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Defendant's general denial of Plaintiffs' allegation, therefore, fails to establish a genuine issue of material fact and does not, standing alone, prevent summary judgment. *See Davis v. Robbs*, 794 F.2d 1129 (6th Cir.) *cert. denied*, 479 U.S. 992, 107 S.Ct. 592, 93 L.Ed.2d 593 (1986). The Court, finding that Defendant has failed to present specific facts to resist Plaintiffs' Motion for Summary Judgment, and finding further that there is no material issue of fact concerning the claims of delinquent contributions for May, 1989 through July, 1990, grants Plaintiffs' Motion for Summary Judgment as to those claims.

## IV

Having granted Plaintiffs' Motion for Summary Judgment, the Court now considers Plaintiffs' Motion for Injunctive Relief against Defendant. Plaintiffs request that the Court order Defendant to submit to an audit in order to confirm that the appropriate contribution amounts have been recorded and are collected. Plaintiffs request further that the Court enjoin Defendant from selling or transferring its assets until all monies owed to the Funds are paid in full.

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), grants the power to plan fiduciaries to seek equitable relief for a viola-

tion of a trust fund agreement or for a violation of an ERISA provision. Moreover, Section 502(g)(2), 29 U.S.C. § 1132(g)(2), provides:

> In any action under this title by a fiduciary for or on behalf of a plan ... in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (E) such other legal or equitable relief as the court deems appropriate.

Pursuant to the authority granted under ERISA, a court may issue an injunction against an employer who violates an agreement to contribute to a multiemployer benefit fund. *See Laborers Fringe Ben. Funds—Detroit & Vicinity v. Northwest Concrete and Construction*, 640 F.2d 1350 (6th Cir.1981). Moreover, the Supreme Court has held that under ERISA, a pension fund may be granted injunctive relief ordering an audit of any payroll, tax and personnel records needed to accurately administer the fund. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). Therefore, as authorized by ERISA and provided for in the collective-bargaining agreement, the Court orders Defendant to permit Plaintiffs access to all records needed to confirm compliance with the Agreement.

Furthermore, the Court grants Plaintiffs' request and enjoins Defendant from selling or transferring its assets until Defendant has cured the contribution deficiencies to the Funds. Defendant contends that enjoining the sale or transfer of its assets is beyond the equitable powers of the Court, but the case law that Defendant cites does not support this contention. The Court finds that the equitable powers granted by ERISA permit it to enjoin the sale or transfer of Defendant's assets.

The prerequisites to the issuance of this injunction include findings that the Plaintiffs are threatened by some irreparable injury for which they have no adequate remedy at law, and that an injunction does not offend public policy. *Laborers Fringe Ben. Funds—Detroit & Vicinity v. Northwest Concrete & Constr., Inc.*, 640 F.2d

1350 (6th Cir.1981). The Court is convinced by Plaintiffs' testimony regarding Defendant's precarious financial condition that the Funds' legal remedy is not adequate. Absent the proposed injunction, there is reason to believe that the Funds may not receive payment and will be thereby irreparably harmed. *See Central States, Southeast & Southwest Areas Pension Fund v. Admiral Merchants, Motor Freight, Inc.,* 511 F.Supp. 38 (D.Minn.1980), *aff'd sub nom. Central States, Southeast & Southwest Areas Pension Fund v. Jack Cole–Dixie Highway Co.,* 642 F.2d 1122 (8th Cir.1981). Moreover, the lingering delinquency of contributions to the Funds damages the Funds' ability to meet its continuing fiduciary duty to provide benefits to employees. The Funds' obligation to make payments to participants without receiving corresponding contributions endangers the Funds' financial security. *See Gould v. Lambert Excavating, Inc.,* 870 F.2d 1214 (7th Cir.1989).

The Court also finds that the proposed injunction does not offend public policy, given Congress' explicit intention in passing ERISA to protect the interests of participants in multiemployer benefit plans from inadequately financed benefit funds. The proposed injunction carries out the public policy expressed in ERISA to secure "the soundness and stability of plans with respect to adequate funds to pay promised benefits...." 29 U.S.C. § 1001(a).

### V

The Court denies Defendant's Motion to Dismiss. The Court grants Plaintiffs' Motion for Summary Judgment as to Defendant's breach of the Settlement Agreement and enters the Consent Judgment against Defendant in the amount of $20,000, plus attorney fees and costs.

The Court also grants Plaintiffs' Motion for Summary Judgment for delinquent contributions from May, 1989 through July, 1990, and orders Defendant to pay Plaintiffs the full amount of delinquent contributions, plus costs and reasonable attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g). Furthermore, the Court directs Defendant to permit Plaintiffs to audit payroll records and any other records relevant to assessing the amount due to the Funds. The Court also enjoins Defendant from selling or transferring any assets until the amount owed to the Funds is fully paid.

It is so ordered.

